CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

FEB 21 2008

JOHN F. CORCORAN, CLERK
BY: /s/ J. Bright
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Number: 7:08cr00012 |
| ) | |
| v. ) | **INFORMATION** |
| ) | |
| ) | Violations of: |
| ) | 18 U.S.C. §1347 |
| LINDA SUE CHEEK ) | |

The United States Attorney charges:

### COUNT ONE

At all times material to this Information:

1. Defendant **LINDA SUE CHEEK** (hereinafter, "CHEEK") was a physician licensed by the Commonwealth of Virginia who practiced family medicine.

2. CHEEK operated New River Medical Associates, Inc., incorporated on October 16, 1997, located at 28 Town Center Drive in Dublin, Virginia. New River Medical Associates, Inc., engaged principally in pain management and alternative medicine.

3. CHEEK employed two family nurse practitioners (FNP) who were approved providers with the Medicaid and Medicare government programs. Each FNP had a unique Medicaid and Medicare identification number assigned for billing purposes.

4. CHEEK was a provider for Medicare and Medicaid.

5. CHEEK submitted the following billings to Virginia Medicaid:

| YEAR | AMOUNT BILLED |
|------|---------------|
| 2002 | $25,506.30 |

| 2003   | $56,774.90  |
|--------|-------------|
| 2004   | $67,540.99  |
| 2005   | $65,465.84  |
| 2006   | $51,662.26  |
| Total: | $266,950.29 |

## The Medicaid Program

6. The Social Security Act of 1965 provided the creation of the Medicare and Medicaid programs. Medicaid programs are administered by the states to provide an array of health care services to those who, due to economic circumstances, could not otherwise afford such health care services. The Social Security Act provided that federal funds would finance a portion of the cost of the Medicaid programs. The United States Department of Health and Human Services and the Commonwealth of Virginia, through the Department of Medical Assistance Services (hereinafter, DMAS), administer the Medicaid program in Virginia.

7. At all times relevant to the Indictment, Medicaid was a "health care benefit program," defined in Title 18, United States Code, §24(b) as "any public or private plan or contract, affecting commerce, under which any medical benefit, item or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item or service for which payment may be made under the plan or contract."

8. DMAS and Medicaid have prescribed certain rules and regulations governing the submission of claims and making payments to health care professionals who provide services to Medicaid recipients. The rules and regulations require the health care professionals submit claims only for services which are actually performed and medically necessary.

2

9. Health care professionals, including CHEEK, submit claims for services rendered to Medicaid recipients via United States mail and by electronic or wire communication. To receive Medicaid reimbursement for covered services, a Medicaid provider must submit a claim to Medicaid's fiscal intermediary, namely First health services (FIRST HEALTH). First Health was under contract with DMAS to receive and process all claims and authorize payment for services under the Medicaid program. Payment for claims is made by electronic funds transfer to the account of the health care professional or by check sent via the United States Postal Service.

### The Medicare Program

The Medicare program was designed to provide medical services, equipment, and supplies to elderly, blind, and disabled beneficiaries pursuant to the Social Security Act (Title 42, United States Code, Section 301 et seq.). Medicare is administered by the Federal government and is funded through a portion of the payroll taxes paid by workers and employers and by premiums deducted from monthly social security checks.

Medicare will only pay for treatment, services, and durable medical equipment that are medically necessary and that meet the Medicare criteria for billing of services. Medicare providers bill the system for medical services rendered to recipients (patients) through fiscal intermediaries. These intermediaries are private insurance companies that serve as the Federal Government's agents in administration of the Medicare program, including the processing and payment of claims. In Virginia, the fiscal intermediary for Medicare is Trail Blazer Health Enterprises, LLC.

### Incident to Billing

10. In addition to reimbursing a physician-provider for his own professional services, Medicaid and Medicare pays for those services that are "incident to the physician's professional

3

services." Such services typically are provided by nurse practitioners and physician assistants as an integral, although incidental, part of the physician's personal professional services in the course of diagnosis or treatment of any injury or illness.

11. However, Medicaid and Medicare limit reimbursement of such incidental services to those situations in which there is direct personal physician supervision over the nurse practitioner. Such "direct personal supervision" requires, at a minimum, that the supervising physician be present in the office suite and immediately available to provide assistance and direction throughout the time the nurse practitioner is performing the services.

12. A solo practitioner must directly supervise the care.

13. As a normal course of business, CHEEK mandated her FNP's to see patients when she was not directly available to supervise.

### The Scheme

From on or about January 2002, to on or about March 2006, **LINDA SUE CHEEK**, defendant herein, knowingly and willfully devised and intended to devise a scheme and artifice to defraud health care benefit programs, Medicaid and Medicare, and to obtain money from such programs by means of false and fraudulent pretenses, representations and omissions, in that the defendant submitted false claims representing that she had performed services for patients when in truth and fact: (1) the defendant had not performed such services, (2) the nurse practitioners performed the services without the direct personal supervision of CHEEK, and (3) CHEEK billed Medicaid for "cleansing sessions" a non-covered investigational service, conducted in a group session, then ultimately and fraudulently billed as a office visit which is not allowed.

From on or about January, 2002, through March, 2006, in the Western District of Virginia

4

and elsewhere LINDA SUE CHEEK, knowingly and willfully executed or attempted to execute a scheme or artifice to defraud and obtain by means of false and fraudulent pretenses, representations, and promises, money under the custody of the Virginia Medical Assistance Program, a health care benefit program as defined by Title 18, United States Code Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services.

14. CHEEK billed for services rendered by two FNP's at the office. Both of the FNP's had active Medicaid and Medicare provider identification numbers.

15. The defendant traveled out of the country on several occasions. The two nurse practitioners treated patients of the practice on dates when CHEEK was out of the country. CHEEK could not meet the requirement of supervision required for incident to billing while in another country. CHEEK submitted billings under her own unique provider number for services conducted by nurse practitioners while out of the country. The following illustrates patient visits conducted by nurse practitioners unsupervised by CHEEK but billed under her provider number:

| Beneficiary | Date of Service | Amount Submitted | Dr. Cheek Location |
|---|---|---|---|
| PB | 11/21/2003 | $66.00 | Canada |
| LD | 11/21/2003 | $66.00 | Canada |
| RE | 11/21/2003 | $66.00 | Canada |
| JL | 11/21/2003 | $66.00 | Canada |
| MT | 11/21/2003 | $66.00 | Canada |
| SP | 11/21/2003 | $66.00 | Canada |
| SP | 11/21/2003 | $66.00 | Canada |
| CD | 11/21/2003 | $66.00 | Canada |
| CD | 11/21/2003 | $66.00 | Canada |

| CH | 11/21/2003 | $66.00 | Canada |

16.    An investigative team conducted surveillance of New River Medical Associates. A subsequent review of Medicaid and Medicare billing statements reveal CHEEK billing for services that were not rendered. On or about the below listed dates, the defendant caused to be submitted false and fraudulent claims for Medicare and Medicaid for services in connection with the authorization and approval of services in the amounts indicated below:

| Beneficiary | Date of Service | Amount Submitted | Dr. Cheek Location | Description |
|---|---|---|---|---|
| RB | 10/25/2005 | $105.00 | Out of Office | Billed Medicaid for treatment of patient as if performed by Dr. Cheek |
| DG | 10/25/2005 | $105.00 | Out of Office | Billed Medicaid for treatment of patient as if performed by Dr. Cheek. |
| JH | 10/25/2005 | $105.00 | Out of Office | Billed Medicaid for treatment of patient as if performed by Dr. Cheek |
| HL | 10/25/2005 | $105.00 | Out of Office | Billed Medicaid for treatment of patient as if performed by Dr. Cheek |
| LR | 10/25/2005 | $105.00 | Out of Office | Billed Medicare for treatment of patient as if performed by Dr. Cheek |

## CLEANSING SESSIONS

17.    CHEEK's practice was made up of a high percentage of chronic pain patients. Cheek practiced a modality she called "cleansing sessions." Cleansing sessions involved the pain patients meeting as a group where they would repeatedly watch the same video or listen to one of the FNP's.

18. They were then required to purchase homeopathic preparations. These sessions are considered investigational and are therefore non-covered services. CHEEK conspired to bill these non-covered sessions as individual office visits. This after being repeatedly educated as to the inappropriateness of the billing.

19. All in violation of Title 18, United States Code, Sections 1347 and 2.

Date: 1-17-2008

John L. Brownlee
JOHN L. BROWNLEE
United States Attorney